IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 19, 2016


**STATE OF TENNESSEE v. CHARLES HENRY MIDGETT, III**


**Appeal from the Criminal Court for Davidson County**
**No. 2014C2302     Cheryl A. Blackburn, Judge**

_____


**No. M2015-00845-CCA-R3-CD – Filed July 1, 2016**

_____


The defendant, Charles Henry Midgett, III, pled guilty to two counts of attempted aggravated child abuse, a Class B felony.  As part of the agreement, the defendant pled guilty as a Range I offender but waived the release eligibility within his range, and he agreed that the trial court would determine the length of the sentences, the release eligibility, and whether the sentences would run concurrently or consecutively.  The trial court sentenced him to twelve years' imprisonment for each count, to be served at forty-five percent.  The sentences were to be served concurrently.  The defendant appeals, asserting that the aggregate sentence is excessive and that the trial court erred in applying certain mitigating and enhancing factors.  Discerning no abuse of discretion, we affirm the sentences imposed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Dawn Deaner, District Public Defender; and Jonathan F. Wing (at hearing) and Emma Rae Tennent (on appeal), Assistant District Public Defenders, for the Appellant, Charles Henry Midgett, III.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Glenn Funk, District Attorney General; and Brian Holmgren (at plea) and Pam Anderson (at sentencing), Assistant District Attorneys General, for the Appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

The defendant became involved in a relationship with his co-defendant, the mother of the two-year-old victim, in the fall of 2013. At first, the two lived with the victim's maternal grandmother, but the victim's maternal grandmother asked the defendant to leave her home, and the victim's mother and the victim went with him. The defendant, the victim's mother, and the victim began sharing a motel room in December 2013.

The defendant exchanged a series of text messages with the victim's father at some point in January 2014. In addition to making threats against the victim's father and casting aspersions on him for attending college, the defendant made the following threats against the victim in the text messages to the victim's father:

> N*gga you a b*tch you dont even whoop yo child it take another n*gga to whoop yo childs a** yeah i said whoop his a**

> Why you talking you mute not see yo son n*gga yeah thts my call since you got nuts now lets see if tht make yo hoea** mad

> Touch yo son n*gga i whoop hus a** ever tyme tht n*gga sh*[t] or p*ss n*gga you see how jumping his a** is n thk i dont whoop his a** must thk am joking huh

> Must beleave if she said tht ill beat her a** n yo son a** my n*gga

> Listen to meh clear my n*gga i dnt gt dump i do tht bruh she rite here nxt to meh bruh im looking at yo son rite now thking shold i sat his a** outside n the cold rite now thnk im playing

> Yeah ima hoe witchu son life n my hands so ill just quit talking sh*t lil bruh

On January 21, 2014, the victim's father called the Department of Children's Services ("DCS") because he was concerned about the defendant's threats against his

son. He also forwarded the text messages to the victim's mother and the victim's grandmother.

On February 8, 2014, the victim's grandmother received a telephone call from the victim's mother indicating that the victim's mother wanted to leave the motel. The victim's grandmother became concerned and went to the motel, but no one answered the door of the room in which the victim and his mother were staying. At this point, the victim's grandmother called the police, and the police were eventually able to enter the room with the aid of motel personnel. In the room, they found the defendant, the victim's mother, and the victim, who had severe bruising, redness, swelling, and lacerations around his face and mouth.

The victim was taken to the hospital. In addition to the injuries around his head, which Investigator Sara Bruner testified were still not healed in April, doctors discovered that his body was covered with older injuries and scarring. Most of the white scars and older injuries exhibited a particular pattern consistent with having been hit repeatedly with a looped-over belt or cord. The victim had scars on his back, chest, bottom, inner and outer legs and thighs, and arms. The victim was two and one half years old, and he was able to communicate and said that the defendant had caused the injuries. He also indicated that the defendant had burned him with a cigarette.

Investigator Bruner interviewed the victim's mother at the time the victim was taken to the hospital, and the victim's mother acknowledged having hit the victim with a belt. Investigator Bruner testified that she had made the defendant aware that she wished to interview him, but he did not come in for an interview until March. At that time, he acknowledged he had an anger problem. When shown pictures of the injuries, the defendant stated, "I didn't do all of that." The defendant eventually acknowledged that he had hit the child with a belt on multiple occasions. Both co-defendants stated that the victim's facial injuries were from falling down the stairs and that the other injuries were inflicted because the victim had difficulty with potty training. Both the victim's father and the victim's grandmother indicated that they had not seen the victim for approximately one month prior to February 8, 2014, and that the victim had no injuries the last time they had seen him.

The victim's mother and the defendant were both charged with four counts of aggravated child abuse and two counts of aggravated child neglect. The defendant agreed to plead guilty to two counts of the lesser included offense of attempted aggravated child abuse by means of a dangerous instrumentality. The agreement allowed the trial court to set the length of the sentence within Range I. The agreement also allowed the trial court to set the release eligibility outside the defendant's range pursuant

3

to *Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997). At the plea hearing, the defendant acknowledged that he had struck the toddler with a belt.

At the sentencing hearing, Investigator Bruner testified regarding the facts of the crimes. The State introduced photographs of the victim, whose body was covered with scars and other evidence of beating and abuse. The State also provided the text messages sent by the defendant, the defendant's juvenile history, and the presentence report containing a summary of the police report of the crime. Investigator Bruner noted that she also observed bruising in the shape of finger marks on the victim's mother's arms. Although the victim's mother had at first told Investigator Bruner that the defendant assaulted her, she later asserted that they were in a "pushing match" and that the defendant was not aggressive toward her.

The defendant introduced the testimony of Becca Dryden, who testified that the defendant would qualify for the Emerging Adults program at Park Center. The program provided employment and education for young adults with mental illnesses. She testified that the defendant had been diagnosed with a mood disorder and post-traumatic stress disorder in prison, as well as borderline personality disorder and antisocial personality disorder. She stated the defendant might also be eligible for housing, but housing would depend in part on his release date.

Erica Buggs, the defendant's mother, testified that he was one of eight children and that he was a funny, playful child who cared about people. She testified that the defendant was spanked with a belt or by hand when he misbehaved. She testified that the defendant had held several jobs since moving out at age nineteen and that the family would support him in a community corrections program. She denied having seen signs of mental illness in him and testified that he would never harm or hit his younger siblings. She acknowledged that he had juvenile convictions for vandalism and attempted burglary and that he violated his juvenile probation by breaking curfew, missing school, and being terminated from a drug treatment program. She testified that she took him out of school when he was eighteen, but later acknowledged that he might have quit school in the ninth grade. Danielle Patterson testified that the defendant was the father of her two-year-old child and that he was a good person and would bring her supplies such as diapers when she asked. She had left her son in the defendant's care on occasions prior to his incarceration in August 2014, and she never saw any injuries on her son.

The defendant testified that what he did was wrong. He described the text messages he sent to the victim's father as "childish" and "stupid." He stated he had been expelled from high school and then from an alternative school. He acknowledged having tried to break into two different houses because he was "bored." He stated that he was put into DCS custody after the second attempted burglary and treated for depression, and

4

he testified that he was currently taking "[s]ome depression pill named Zoloft. It's like bipolar and schizophrenia." He confirmed he was spanked with a belt as a child. He testified that he had only hit the victim with a belt on two occasions and only struck him four times. He denied burning the victim with cigarettes or pouring cold water on him and putting him outside. He stated that if the victim or the victim's father were there at the hearing, he would say, "I'm sorry and … I really didn't have a problem with him. It was just more like I guess jealousy or hate." Investigator Bruner testified in rebuttal that in her interview with him, the defendant had acknowledged striking the victim on five or six occasions and hitting him three or four times during each occasion.

The trial court found that various enhancement factors applied in sentencing, including that the defendant had a previous history of criminal behavior in addition to that necessary to establish the range and that he was the leader in a crime involving two or more actors. *See* T.C.A. § 40-35-114(1), (2). The court found the victim was so young that he could not seek help and that he was accordingly particularly vulnerable due to age. *See* T.C.A. § 40-35-114(4). The trial court found the defendant had treated the victim with exceptional cruelty, noting the extent of the scarring and abuse and the fact that the defendant apparently punished the victim for urinating and defecating. *See* T.C.A. § 40-35-114(5). The trial court cited to the text messages as evidence that the crime was committed to gratify the defendant's desire for pleasure or excitement, and the court found the defendant had previous violations of the conditions of his juvenile probation. *See* T.C.A. § 40-35-114(7), (8). It also found that the defendant abused a position of trust in committing the crime and that he had juvenile convictions which would correspond to felonies. *See* T.C.A. § 40-35-114(14). In mitigation, the trial court rejected the argument that the defendant's youth excused his conduct or that he did not have sustained intent to commit the crimes, noting the fact that the injuries were in various stages of healing. *See* T.C.A. § 40-35-113 (6), (11). The trial court rejected the defendant's argument that he believed the abuse was appropriate parenting or that his mental health was a mitigating factor, noting he had only recently been diagnosed with any disorder and that it was primarily antisocial ADHD or bipolar disorder. The trial court considered as a mitigating factor that the defendant acknowledged responsibility by pleading guilty. *See* T.C.A. § 40-35-113(13). It sentenced the defendant to twelve years on each count, with a forty-five percent release eligibility date. The trial court ordered the sentences to be run concurrently.


**ANALYSIS**


On appeal, the defendant argues that the trial court erred in deciding the aggregate sentence because it is inconsistent with the purposes and principles of sentencing. As part of his legal argument, he asserts that the trial court erred in rejecting three of the

5

mitigating factors and in enhancing the sentence based on the finding that the defendant was the leader in the commission of an offense involving two or more criminal actors and that the defendant committed the crime to gratify the defendant's desire for pleasure or excitement.

This court reviews challenges to the length of a sentence under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentences that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Even if the trial court "recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors." *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The trial court is "to be guided by — but not bound by — any applicable enhancement or mitigating factors when adjusting the length of a sentence." *Bise*, 380 S.W.3d at 706. Further, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* A sentence imposed by the trial court that is within the appropriate range should be upheld "[s]o long as there are other reasons consistent with the purposes and principles of sentencing as provided by statute." *Id.* The appealing party bears the burden of proving that the sentence was improper. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the sentence, the trial court must consider: (1) any evidence received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the applicable mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b) (2010).

"The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(4), (5). The defendant asserts that the trial court misapplied some of the enhancement and mitigating factors and that because he has a large family and "potential for rehabilitation" the sentence he received is not the least severe measure necessary to achieve the purposes of sentencing.

The trial court chose to sentence the defendant to the maximum in the range based on the finding of numerous enhancement factors, many of which the defendant does not contest. The court found that the circumstances of the crime were particularly shocking, horrifying, and reprehensible and that the defendant would most likely have been convicted as charged of multiple counts of aggravated child abuse of a child under eight years old, a Class A felony, had he gone to trial. The court noted that it gave the great weight to the fact that the child was only two years old and unable to seek help and to the fact that the defendant treated the child with exceptional cruelty, by his own admission beating the toddler whenever he urinated or defecated. In *Bise*, the trial court misapplied the single enhancement factor supporting the sentence. *Bise*, 380 S.W.3d at 708. The sentence was nevertheless upheld because the trial court had based the decision on its determination of the need for deterrence and the defendant's potential for rehabilitation. *Id.* at 709. Here, the trial court properly considered the purposes and principles of sentencing, concluding that the crime was particularly reprehensible and that confinement was necessary to avoid depreciating the seriousness of the offense. The trial court applied several enhancement factors, many of which the defendant does not contest. We conclude there was no abuse of discretion.

## CONCLUSION

Because we conclude the trial court did not abuse its discretion, we affirm the sentences.

_____
JOHN EVERETT WILLIAMS, JUDGE

7